**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | | |
|---|---|---|
| DANIEL MEDINA and NIKITA GROSS, | ) ) ) | |
| Plaintiffs, | ) ) | No. 12 C 00170 |
| v. | ) ) | Judge John J. Tharp, Jr. |
| PUBLIC STORAGE, INC., et al., | ) ) | |
| Defendants. | ) | |

## MEMORANDUM OPINION AND ORDER

This putative class action challenges certain practices related to the insurance of goods stored in self-storage units rented from defendant Public Storage.[1] The plaintiffs contend that they were wrongly denied insurance coverage for items they say were stolen from the storage unit leased by plaintiff Gross at a Public Storage facility in Chicago. They contend that Public Storage not only breached its rental agreement, but also engaged in unfair business practices by concealing its role as the reinsurer under the policies offered to Public Storage customers, which are underwritten by defendant New Hampshire Insurance Company (NHIC) and obtained through defendant Willis Insurance Services. On behalf of a putative class, the plaintiffs seek compensatory and punitive damages as well as declaratory and injunctive relief.

## BACKGROUND

On March 13, 2010, Plaintiff Gross entered into a "Lease/Rental Agreement" with the Public Storage facility located at 4430 N. Clark Street in Chicago. Her husband (then boyfriend) Daniel Medina, also a plaintiff, was not present when Gross rented the storage unit, but Gross

---

[1] For purposes of this opinion, the Court refers to the Public Storage entities collectively as "Public Storage."

listed him on the rental agreement as an "alternate contact" and an "authorized access person." Gross also executed the Insurance Election Addendum to Rental Agreement, whereby she purchased $2000 worth of insurance for the property stored in her unit. The policy is offered by Willis Insurance Services and is underwritten by New Hampshire Insurance Company; however, as part of the Public Storage Insurance Program, Public Storage makes the insurance available to its customers at the time of the rental, and it collects the premiums. Tenants who elect the insurance receive an Illinois Certificate of Insurance that evidences their coverage under the Master Policy; however, Gross alleges that she was not given a Certificate of Insurance.

The insurance policy provides coverage for burglary, which it defines and limits as follows:

> The term Burglary means the act of stealing property by forcible entry into the storage space described in the Rental Agreement, and must be evidenced by visible signs of forced entry. However, this coverage only applies when such storage space is securely locked at the time of the forcible entry, and does not apply to the lien enforcement procedures by the Owner. A missing lock, or the presence of lock different than the lock placed by you on the storage space, is not sufficient, standing alone, to establish forcible entry.

The insurance contract also contains a so-called "conformity clause" set forth on the Certificate of Insurance, which states: "If the terms of this Certificate are in conflict with the laws of the state wherein the Certificate is issued, they are hereby amended to conform to such statutes."

Public Storage earns revenue through the Public Storage Insurance Program; it turned a profit of nearly $58 million from the program in 2011. PS Insurance Company-Hawaii LTD acts as a reinsurer of the Master Policy pursuant to a contract with NHIC. However, this fact is not disclosed to consumers who purchase insurance through the program, who are offered coverage "available through Willis Insurance Services of California, Inc.," the insurance broker. Claims

are handled by a third-party administrator hired by Public Storage. The plaintiffs have not contested the evidence that Public Storage has no input into whether claims are granted or denied.

On April 27, 2011, when Gross and Medina visited the storage unit for the first time after Gross rented it more than a year earlier, they learned that the lock had been cut on October 20, 2010, and replaced (at some later, but unknown, time) with a Public Storage lock. They were informed that this action had been taken in response to delinquencies in the account. Gross and Medina allege that they did not receive any notice that Public Storage was taking that action. They were given access to the storage unit, at which time they discovered that "many items" were missing and "their belongings were not as they had left them." When the plaintiffs filed a claim for $8000 under the insurance policy, it was denied due the absence of "forcible entry." The plaintiffs also directly appealed to Public Storage for compensation, but they were denied based upon Paragraphs 7 and 8 of the Rental Agreement, which provide:

> 7. Owner and Owner's agents, affiliates, authorized representatives, and employees ("Owner's Agents") will not be responsible for, and Occupant hereby releases Owner and Owner's Agents from any responsibility for, any loss, liability, claim, expense or damage to property that could have been insured (including without limitation any Loss arising from the active or passive acts, omission or negligence of Owner or Owner's Agents) (the "Released Claims"). Occupant waives any rights of recovery against Owner or Owner's Agents for the Released Claims, and Occupant expressly agrees that the carrier of any insurance obtained by Occupant shall not be subrogated to any claim of Occupant against Owner or Owner's Agents.

> 8. Owners and Owner's Agents will have no responsibility to Occupant or to any other person for any loss, liability, claim, expense, damage to property or injury to persons ("Loss") from any cause, including without limitations, Owner's and Owner's Agents active or passive acts, omissions, negligence or conversion, unless the Loss is directly caused by Owner's fraud, willful injury or willful violation of law. Occupant shall indemnify and hold

> Owner and Owner's Agents harmless from any loss incurred by
> Owner and Owner's Agents in any way arising out of Occupant's
> use of the Premises or the Property including, but not limited to,
> claims of injury or loss by Occupant's visitors or invitees.
> Occupant agrees that Owner's and Owner's Agents' total
> responsibility for any Loss from any cause whatsoever will not
> exceed a total of $5,000.

The Rental Agreement also contains a limited liability provision, Paragraph 18, which provides:

> Owner hereby disclaims any implied or express warranties,
> guarantees or representations of the nature, condition, safety or
> security of the Premises and the Property and Occupant hereby
> acknowledges, as provided in paragraph 1 above, that Occupant
> has inspected the Premises and the Property and hereby
> acknowledges and agrees that Owner does not represent or
> guarantee the safety or security of the Premises or the Property or
> any personal property stored therein, and this Lease/Rental
> Agreement does not create any contractual obligation for the
> Owner to increase or maintain such safety or security.

Having failed to obtain recourse under the insurance policy or through Public Storage directly, the plaintiffs, Gross and Medina, filed this class action. The First Amended Complaint, which governs here, seeks a declaratory judgment voiding Paragraphs 7, 8, and 18 of the Rental Agreement as unlawful and contrary to public policy. The complaint alleges negligence by Public Storage in failing to adequately secure its facilities. It also claims that all defendants violated the Illinois Consumer Fraud Act by failing to disclose Public Storage's true role in the insurance program and its financial incentive to deny claims. Finally, the complaint alleges two breaches of contract, for which both damages and declaratory relief are sought: the first, that denials based on "forcible entry" are in breach of the insurance contract because that requirement was written out of the policy by operation of the conformity clause; and the second, that even if the forcible entry requirement applies, the plaintiffs' claims were wrongly denied because they met the requirement.

After class discovery, the plaintiffs moved for class certification. The defendants, in the meantime, moved to partially dismiss the First Amended Complaint. Both motions have been fully briefed. For the reasons that follow, the defendant's motion is granted in part and denied in part, and the motion for class certification is denied.

## I.        Motion to Dismiss

When considering a motion to dismiss under either Rule 12(b)(1) or Rule 12(b)(6), the Court accepts as true all well-pleaded facts and draws all reasonable inferences in favor of the plaintiff. *E.g., Yeftich v. Navistar, Inc.*, 722 F.3d 911, 915 (7th Cir. 2013) (Rule 12(b)(6) motion); *Scanlan v. Eisenberg*, 669 F.3d 838, 841 (7th Cir. 2012) (Rule 12(b)(1) motion to dismiss for lack of standing). Exhibits attached to a complaint become part of the pleadings, *see* Fed. R. Civ. P. 10(c), and can be considered on a motion to dismiss. *Bogie v. Rosenberg*, 705 F.3d 603, 609 (7th Cir. 2013).

To survive a motion to dismiss under Rule 12(b)(6), the complaint must "state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007); *Yeftich v. Navistar, Inc.*, 722 F.3d 911, 915 (7th Cir. 2013). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Statements of law or unsupported conclusory allegations need not be taken at face value. *Yeftich*, 722 F.3d at 915.

### A.        Plaintiff Medina's Standing

The defendants first seek to dismiss all of Plaintiff Medina's claims for lack of standing. Medina, by his own admission, was not a party to the Rental Agreement or to the insurance policy; Ms. Gross rented the storage unit and obtained the insurance for its contents.

To have Article III standing, a plaintiff must have "a personal injury fairly traceable to the defendant's allegedly unlawful conduct and likely to be redressed by the requested relief." *G & S Holdings LLC v. Continental Cas. Co.*, 697 F.3d 534, 540 (7th Cir. 2012) (citing *Allen v. Wright*, 468 U.S. 737, 751 (1984)). There are also prudential limitations of the court's exercise of jurisdiction. *Id.* One of the prudential standing requirements is that the plaintiffs must assert their own legal rights and interests, and cannot rest their claims to relief on the legal rights or interests of third parties. *Id.* at 540–41 (citing *Warth v. Seldin*, 422 U.S. 490, 499 (1975). A similar concept is expressed through the statutory requirement that every action must be prosecuted by the "real party in interest." *See* Fed. R. Civ. P. 17. It is this prudential aspect of standing doctrine the defendants invoke in arguing that "because Plaintiff Medina lacks such contractual interest or any other cognizable interest, he cannot rest his claim for relief on the legal rights or interests of third parties such as Plaintiff Gross." Mem., Dkt. # 100 at 7.

In their response, the plaintiffs do not attempt to argue that Medina has any rights under, or any standing to enforce, the Rental Agreement, to which he is not a party. And the Court agrees with defendants that Medina has shown no basis for enforcing the Rental Agreement; at a minimum, therefore, the claims premised solely on the rental agreement cannot be pursued by Medina. Plaintiffs do contend that Medina is a third-party beneficiary of the insurance policy and therefore has a direct interest that he can enforce in this lawsuit.

Under Illinois law—which the parties agree applies here—"if a contract is entered into for the direct benefit of a third person who is not a party to the contract, that person may sue on the contract as a third-party beneficiary." *City of Yorkville ex rel. Aurora Blacktop Incorporated v. American Southern Ins. Co.*, 654 F.3d 713 (7th Cir. 2011). The intent to benefit the third party must affirmatively appear from the language of the contract; either it must be explicit or its

implication must be "so strong as to be practically an express declaration." *Id*. (citation and internal quotation marks omitted). "Illinois law holds a strong presumption against creating contractual rights in third parties, and this presumption can only be overcome by a showing that the language and circumstances of the contract manifest an affirmative intent by the parties to benefit the third party." *Estate of Willis v. Kiferbaum Const. Corp*., 830 N.E.2d 636, 642-43 (Ill. App. Ct. 2005). An "intended beneficiary" may sue under a contract, but a mere "incidental beneficiary" may not. *Id*. at 643.

The plaintiffs argue that Medina is an intended third-party beneficiary of the insurance policy. Section D of the Master Policy—the grant of coverage by NHIC to Public Storage for its tenants, "the insured"—states that the policy provides coverage for "the personal property of others for which the insured may be liable or have assumed liability prior to a loss while in storage within the enclosed storage space." The Illinois Certificate of Insurance contains the same language.

This language falls far short of rebutting the "strong presumption" of the creation of contractual rights for a third party. The clear import of the provision on which the plaintiffs rely is that coverage is extended *to the insured*—Gross—for property that she does not own but for which she has assumed liability. For example, the preamble to the Master Policy makes clear that the "insured" is the "person who is named as the tenant in the Rental Agreement" with public storage. The policy does not create any independent rights for the owner of the property.  Mr. Medina is not an "additional insured" under the policy, and there is no language supporting his argument that the policy provides coverage to him or allows him to enforce the policy. To the extent that Medina owned property that was stolen from the storage unit, he had, at most, an indirect interest that might satisfy constitutional standing requirements but not the prudential

requirement that the litigant cannot sue to enforce the legal rights of another. *See Edgewood Manor Apt. Homes, LLC v. RSUI Indem. Co.*, 733 F.3d 761, 771 (7th Cir. 2013).

There is simply no basis in the language of the Master Policy from which intent to benefit third parties can be inferred. Accordingly, Medina has no rights under the policy and no standing to either challenge or enforce it.

With respect to the non-contract claims[2]—specifically, the fraud claim under the ICFA and the negligence claim—Medina also lacks standing (and does not argue otherwise). There is no question that Medina did not review the Rental Agreement or the Insurance Election Addendum; he was not even present when Gross rented the storage unit and executed the documents, and he did not know that she had purchased any insurance until a year after the rental began. He therefore cannot establish that he incurred any injury as a result of the defendants "concealing" Public Storage's "role in the insurance program." He was not induced to purchase insurance because of any misrepresentations or omissions about "the true source" of the coverage.

As for the negligence claim, again, Medina lacks standing to claim that Public Storage violated what the complaint describes as "a duty to exercise reasonable care and diligence in securing Plaintiffs' property and storage unit." Medina does not plausibly allege any facts that could support the existence of a legal duty of care owed to him by Public Storage to maintain the security of its facility from burglars. Unlike Gross, Medina had no contract with Public Storage requiring it to provide a secure facility for the storage of his goods, and as already noted, he has not argued that he is a third party beneficiary of the rental agreement (in contrast to his argument

---

[2] The declaratory judgment claims all seek interpretation of the Rental Agreement or the insurance policy; as such, they are also contract claims for purposes of the standing analysis. It is worth noting, however, that the Declaratory Judgment Act "provides a cause of action only to those seeking a declaration of their own legal rights." *Edgewood Manor*, 733 F.3d at 772 n.2.

about the insurance policy). To the extent Public Storage owed any such duty, it was to the tenant, Gross, with whom it had a contract.

All of Medina's claims are dismissed for lack of prudential standing.

**B.      Declaratory Judgment Counts**

The defendants next seek the dismissal of the complaint to the extent that Counts Two and Four seek declaratory relief for the same conduct upon which the claims of breach of contract in Counts One and Three are based. The defendants argue that those two declaratory judgments counts—there are others—are redundant and legally improper in that there is an adequate remedy at law for the challenged conduct.

The purported redundancy of the declaratory-judgment counts is not a reason to dismiss them. It is true that there was no reason for plaintiffs to plead separate counts distinguished only by the type of relief sought. Pleading in counts is required for "each claim *founded on a separate transaction or occurrence*" if doing so "would promote clarity." Fed. R. Civ. P. 10(b).  Nothing is gained by dividing the same claim into multiple counts based upon the relief sought; on that score, the Court agrees with the defendants that the first four counts are "redundant."

But what is the harm? Dismissing the counts that seek declaratory relief based upon the same facts underlying the breach-of-contract claims does nothing to pare down the scope of the litigation; it will not narrow discovery or affect the defendants' liability. In other words, counts One through Four are do not represent separate "claims"; there is single set of facts that the plaintiffs say entitle them to relief on multiple theories.

Furthermore, the plaintiffs are entitled to seek "relief in the alternative or different types of relief." Fed. R. Civ. P. 8(a)(3). The Declaratory Judgment Act explicitly allows a court to enter declaratory judgment "whether or not further relied is or could be sought."  28 U.S.C.

§ 2201(a). Plaintiffs might not be entitled to multiple forms of relief once their claims are established, but that cannot be resolved at the pleading stage. *See Medcom Holding Co. v. Baxter Travenol Laboratories, Inc*., 984 F.2d 223, 229 (7th Cir. 1993).

If the defendants could establish that, based on the facts pleaded, the plaintiffs were not legally entitled to a declaratory judgment, there might be some purpose to dismissing those counts from the complaint. But they have not done so. They focus on the supposed "redundancy" of the declaratory judgment counts. But, contrary to case cited by defendants, the plaintiffs here are not seeking a declaratory judgment that some provision of the contract was breached—a declaration that surely would be redundant with a breach-of-contract claim. *See Daum v. Planit Solutions, Inc*., 619 F. Supp. 2d 652, 657 (D. Minn. 2009). Instead, in Count Two, they seek a declaration that their interpretation of the conformity clause of the Certificate of Insurance is correct, and in Count Four, they seek a declaration that as a matter of law, a "forcible entry" is established when a lock is removed and belongings removed without permission of the tenant.[3]

A declaratory judgment interpreting an insurance contract or determining whether it covers a particular type of event is a typical remedy. The defendants give no reason why, taking the facts pleaded by the plaintiffs as true, declaratory relief could not be obtained as a matter of law. Therefore, there is nothing for the Court to "dismiss"; the plaintiff's unnecessary use of multiple counts is not a matter for Rule 12(b)(6) to address.

### C.       Pleading of ICFA claim

Next the defendants contend that the plaintiffs have not set forth a plausible claim for relief under the ICFA. That statute protects against "[u]nfair methods of competition and unfair

---

[3] The plaintiffs do not do the Court or the defendants the favor of setting forth with precision what declarations they seek, but the allegations in Counts Two and Four, when read with the prayer for relief, suggest something to the effect of what the Court has set forth.

or deceptive acts or practices" including the employment of fraud or concealment of material facts with the intent that others rely upon it, and anyone who suffers "actual damage" as a result a violation of the ICFA is entitled to bring an action. *See* 815 ILCS 505/2, 505/10A; *Wigod v. Wells Fargo Bank*, N.A., 673 F.3d 547, 574 (7th Cir. 2012). To establish a claim under the ICFA, a plaintiff must prove: (1) a deceptive act or practice by the defendant, (2) the defendant's intent that the plaintiff rely on the deception, (3) the occurrence of the deception in a course of conduct involving trade or commerce, and (4) actual damage to the plaintiff that is (5) a result of the deception. *De Bouse v. Bayer AG*, 922 N.E.2d 309 (Ill. 2009).

When a plaintiff in federal court alleges "fraud" in an ICFA claim, the heightened pleading standard of Federal Rule of Civil Procedure 9(b) applies. *Pirelli Armstrong Tire Corp. Retiree Med. Benefits Tr. v. Walgreen Co*., 631 F.3d 436, 441 (7th Cir. 2011); *Davis*, 396 F.3d at 883. "Rule 9(b) requires that facts such as 'the identity of the person making the misrepresentation, the time, place, and content of the misrepresentation, and the method by which the misrepresentation was communicated to the plaintiff' be alleged in detail." *Hefferman v. Bass*, 467 F.3d 596 (7th Cir. 2006) (quoting *Bankers Trust Co. v. Old Republic Ins. Co*., 959 F.2d 677, 683 (7th Cir. 1992)). On the other hand, the Seventh Circuit has held that when the ICFA claim is for "unfair conduct" rather than "fraud," the particularity requirement of Rule 9(b) does not apply. *Windy City Metal Fabricators & Supply, Inc. v. CIT Technology Financing Services, Inc.,* 36 F.3d 663, 669-70 (7th Cir. 2008). Under the ICFA, whether a practice is "unfair" hinges on whether it offends public policy; is immoral, unethical, oppressive, or unscrupulous; and causes substantial injury to consumers. *Robinson v. Toyota Motor Credit Corp.*, 775 N.E.2d 951, 961 (Ill. 2002) (adopting 3-part test for unfair practices claims); *Cohen v. American Sec. Ins. Co*., 735 F.3d 601, 609 (7th Cir. 2013) ("The Federal Trade Commission, the

United States Supreme Court, and the Illinois Supreme Court consider the following factors as relevant to the inquiry: (1) whether the practice offends public policy; (2) whether it is immoral, unethical, oppressive, or unscrupulous; and (3) whether it causes substantial injury to consumers.").

In this case, the plaintiffs argue in their response to the motion to dismiss that the heightened pleading standard does not apply to their claims because they are pursuing a claim of "unfair conduct." The defendants respond that the plaintiffs' argument is not consistent with the allegations in the complaint and is simply an attempt to evade the heightened standard.

The common allegations in the complaint, paragraphs one through 38, do not specifically allege any false statements or fraudulent omissions. Paragraph 2 refers to the defendants "unfair, unlawful, and deceptive acts and practices . . . regarding the Public Storage Insurance Program," alleging: "The PS Defendants' role as the re-insurers was never disclosed to self-storage tenants who purchased insurance through PSIP. Nor was the PS Defendants' financial motive for having claims denied ever revealed to tenants." Complaint, Dkt. # 95 at ¶ 2. The plaintiffs further allege that defendants Willis and NHIC were merely "front companies" through which Public Storage operated as unlicensed re-insurers. *See id.* at ¶¶ 3-6. Count Five specifically alleges a violation of the ICFA, and again refers to the arrangement under which Public Storage was the de facto insurer but "all of the defendants were working in concert to conceal this fact from Plaintiffs." Id. ¶¶ 74-76. The plaintiffs then go on to allege that the defendants "failed to disclose many material facts to Plaintiffs" including that (1) Public Storage "acted as the re-insurers (and/or insurers) for the policies" and "had a financial motive in denying claims submitted by tenants"; (2) that Public Storage "retained most of the premiums"; and (3) that "Willis is not an insurance company." *Id.* ¶¶ 77-79. As a result of the concealment of the "true source of the insurance

coverage," plaintiffs claim, the defendants "created likelihood of confusion or of misunderstanding as to the source, sponsorship, approval and/or certification of the insurance policy."

Thus, the plaintiffs' allegations speak to both unfair practices and fraud in the form of the deliberate failure to disclose material facts. Ultimately, however, the allegations fail to state a plausible claim for relief whether the heightened standard is applied or not.

Clearly, the complaint falls short of alleging the "who, what, when, where, and how" that Rule 9(b) requires for pleading a claim of fraudulent misrepresentation or omission. *See Cincinnati Life Ins. Co. v. Beyrer*, 722 F.3d 939, 948 (7th Cir. 2013); *DiLeo v. Ernst & Young*, 901 F.2d 624, 627 (7th Cir. 1990). Indeed, focusing entirely on the "unfair" prong of the ICFA, the plaintiffs do not argue that they have pled with particularity any circumstances constituting a fraud, either by misrepresentation or omission. *See* Mem., Dkt. # 105 at 8.

The complaint also fails to plausibly allege "unfair" practices of the defendants. Looking to the *Robinson* factors[4] applied to ICFA claims not dependent on fraud, the only one that is met here is the first. The plaintiffs allege that Public Storage is violating public policy by running an unlicensed insurance business with the use of "front" companies and failing to provide consumers with material information regarding the insurance policies at issue.

The second *Robinson* factor—allegations of oppressive, unscrupulous or immoral conduct—is harder to glean from the allegations in the complaint. For example, the plaintiffs do not suggest that they were coerced into purchasing insurance from Public Storage rather than an

---

[4] The plaintiffs refer to the *Robinson* factors, but do not contend that their complaint plausibly alleges facts that are consistent with the unfair conduct they describe. *See* Mem., Dkt. # 105 at 8 ((citing *Windy City Metal Fabricators & Supply Inc. v. CIT Tech. Fin. Servs.*, 536 F.3d 663, 670 (7th Cir. 2008) (setting forth the Robinson factors)). They simply argue in conclusory fashion that they satisfied Rule 8 pleading standards.

independent insurer or that they lacked reasonable alternatives in the marketplace. *See Robinson*, 775 N.E. 2d at 962; *G.M. Sign, Inc., v. Elm St. Chiropractic*, Ltd., 871 F. Supp. 2d 763, 769-770 (N.D. Ill. 2012). And there is nothing inherently coercive about requiring a tenant to purchase insurance. *See Cohen*, 735 F.3d at 610 (explaining that it is not coercive to require party to maintain insurance coverage or to threaten to invoke the contractual remedies available for breach of that duty). And, of course, the plaintiffs could have gone elsewhere to store their goods. *See Robinson*, 775 N.E. 2d at 962 (no oppression or coercion where "plaintiffs could have gone elsewhere to lease a car.").

Furthermore, the plaintiffs fall far short of alleging facts consistent with the third *Robinson* factor: that the defendants' allegedly unfair practices caused "substantial injury" to consumers.[5] "A practice causes substantial injury to consumers if it causes significant harm to the plaintiff and has the potential to cause injury to a large number of consumers." *G.M. Sign, Inc.*, 871 F. Supp.2d at 770. In a fraud case, alleging an injury means plausibly asserting that "had it not been for the fraud, he would have been spared an injury and thus would be better off." *See Midwest Commerce Banking Co. v. Elkhart City Centre*, 4 F.3d 521, 524 (7th Cir. 1993). So too with an unfair trade practices: the plaintiff is required to allege some injury, likely pecuniary, caused by the unfair practice. *See Wigod*, 673 F.3d at 575-76.

Here, there are no allegations that the plaintiffs would have done anything differently had they fully understood the respective roles of Public Storage, Willis, and NHIC in the Public Storage Insurance Plan. They do not allege that they would not have purchased insurance or that

---

[5] As discussed further below, to the extent the plaintiffs have alleged a pecuniary injury, it does not stem from their purchase of the insurance or the price of maintaining the insurance—which could be said to result from having been deceived into purchasing the Public Storage Insurance—but rather from the denial of their insurance claims where they assert coverage should have been extended. That injury is not one the stems from the allegedly unfair practices; it results from what the plaintiffs contend is an unreasonable interpretation of the contract.

they would have saved money purchasing it from a different insurer. The only harm the plaintiffs allege—independent of the denial of coverage—is a "likelihood" of confusion or misunderstanding about the structure of the Public Storage Insurance Plan. They do not allege that they themselves were confused, that they purchased insurance from Public Storage as a result of the sham, or that they incurred any pecuniary damages as a result of the "likely" confusion. *See Siegel*, 612 F.3d at 937 (explaining that private parties must show "actual damage" in order to maintain an action under the ICFA for unfair practices). Moreover, the plaintiffs fail to grapple with the basic fact that *all* insurers have a financial incentive to deny claims. That is a theoretical conflict of interest, but it is not a fraudulent or unscrupulous practice, and had the information been disclosed, they would not have been able to purchase a policy from a different insurer that somehow profited from paying out claims. Indeed, given that it is always against an insurer's direct financial interest to grant coverage (though an overly penurious insurer might have difficulty attracting customers), the allegation of "confusion" about the applicable incentives is itself somewhat confusing.

At bottom, the only injury that the plaintiffs plausibly allege is the pecuniary loss stemming from the denial of their insurance claims under the policy; that is the same injury that is claimed with respect to the alleged breaches of contract. And that is the final nail in the coffin of the ICFA claim: when the precise harm alleged is taken into account, it is wholly duplicative of the breach-of-contract action. As the defendants rightly argue, the ICFA does not protect against breaches of contract and should not be invoked as an alternative or additional remedy in contract disputes. In *Avery v. State Farm Mut. Auto. Ins. Co.*, 835 N.E.2d 801 (Ill. 2005), the Illinois Supreme Court made clear that "[a] breach of contractual promise, without more, is not actionable under the Consumer Fraud Act." *Id.* at 844. The defendants' failure to provide

insurance coverage for the thefts of plaintiffs' property from their Public Storage unit is not independently actionable under the ICFA. *See id.*; *Greenberger v. GEICO General Ins. Co.*, 631 F.3d 392, 399 (7th Cir. 2011) ("a consumer-fraud claim under the statute requires something more than a garden-variety breach of contract"); *Martinez v. River Park Place, LLC*, 980 N.E.2d 1207, 1219-1220 (Ill. App. Ct. 2012). The plaintiffs purchased insurance and had their theft claims denied; that is the only harm they allege that they suffered. Absent some deceptive or fraudulent conduct that caused some other injury, there is no basis in the complaint for a separate claim under the ICFA. And although the plaintiffs use buzzwords such as "material omission," there is a common pool of factual allegations and the ICFA claim is simply a restatement of the claimed breaches of contract. *See Greenberger*, 631 F.3d at 399 ("the consumer-fraud and contract claims rest on the same factual foundation; no distinct deceptive acts are alleged").

### D. Contractual "Burglary" Definition

The defendants next seek to preclude relief on a breach-of-contract theory to the extent the plaintiffs' claims rest on an interpretation of the "conformity clause" in the Certificate of Insurance and Master Policy that would require the policy's definition of "burglary" to conform to the definition in the Illinois Criminal Code. The conformity clause states: "If the terms of this Certificate are in conflict with the laws of the state wherein the Certificate is issued they are hereby amended to conform to such statutes."

As a matter of law, the defendants contend, the conformity clause requires the policy to conform—and automatically amends it to conform—to state laws regulating insurance, not any and all state laws of general applicability, such as the criminal code. The plaintiffs, on the other hand, contend that if any provision of the policy conflicts with any aspect of state law, the state law prevails and is binding on the insurer.

As the plaintiffs note, the cases on which the defendants rely to support their argument that the conformity clause did not reform the burglary definition were decided in the context of statutes of limitations, holding that the state law providing for a 10-year statute of limitations for breach-of-contract suits does not conflict with, and therefore does not supersede, the provision in the insurance policies providing for a shorter limitations period. *See Atwood v. St. Paul Fire & Marine Ins. Co.*, 845 N.E.2d 68 (Ill. App. Ct. 2006); *McMahon v. Millers Nat'l Ins. Co.*, 266 N.E.2d 714 (Ill. App. Ct. 1971).[6] The plaintiffs contend that the defendants are wrong to extrapolate from these cases a general principle that a conformity clause does not reform a contractual provision if the state law at issue is generally applicable rather than specifically directed at insurance.

The defendants have the better of the argument, although not necessarily because the cited cases have firmly established the rule they propose. As this Court signaled when it addressed the plaintiffs' motion for leave to amend the complaint—although it gave the plaintiffs the benefit of the doubt—the plaintiffs' interpretation is simply not a fair reading of the contract. Order, Dkt. # 91 at 2-3 (Sep. 6, 2012). A predicate for operation of the conformity clause is a "conflict" with state law. The plaintiffs do not allege any true conflict between the policy's definition of burglary and the one in the Illinois Criminal Code. The insurance policy does not infringe on Illinois law; "burglary investigations and prosecutions in Illinois will certainly not be affected by the fact that the parties to an insurance contract chose to define the term more narrowly in their own, private, agreement." *Id*. at 3. By contrast, if the insurance policy contained a provision that the Illinois Insurance Code does not permit, or if it lacked a provision

---

[6] Defendants do not cite contrary authority, but some exists; *see, e.g., Toney v. Great-West Life Assur. Co*., No. 89 C 1027, 1990 WL 165320, at *4 (N.D. Ill. 1990) (applying Illinois law and holding that 10-year statute of limitations for written contract claims "conflicts with a three-year contractual limitation.").

that the Illinois Insurance Code requires, enforcement of the policy would violate Illinois law. To avoid this result, the conformity clause automatically reforms the policy to render it enforceable in the state. Indeed, in Illinois, a contractual conformity clause is redundant with existing state law that provides that "all applicable statutes in effect at the time a policy is issued are deemed a part of the policy." *Gen. Cas. Ins. Co. v. Lacey*, 769 N.E.2d 18, 20 (Ill. 2002); *see Cummins v. Country Mutual Insurance Co.*, 687 N.E.2d 1021 (Ill. 1997) (Any conflict between statutory and insurance policy provisions is resolved in favor of the statutory provisions.). Any insurance policy provisions in conflict with the applicable statutes are void under Illinois law. *Harris v. St. Paul Fire & Marine Ins. Co.*, 618 N.E.2d 330, 333 (Ill. App. Ct. 1993). The "applicable" statutes are "statutory provisions *applicable to contracts of insurance*," *id.*, not any and all Illinois laws of general application. An insurance policy's conformity clause should be understood in the same way: the state's laws regulating insurance trump any conflicting policy terms. *See First Specialty Ins. Corp. v. Cont'l Cas. Co.*, 2002 WL 31718634 (N.D. Ill. 2002) ((conformity clause that did not refer specifically to insurance law "amends those terms of the policy that are in *conflict* with Illinois statutory *insurance* law" (emphasis on "insurance" added)).

Thus understood, the conformity clause at issue here did not reform the policy to incorporate the Illinois criminal definition of burglary over the contract's own definition, and the insurer was entitled to enforce the provision of the contract that requires proof of a "forcible entry" when a claim of loss from burglary is made. Therefore, the plaintiffs cannot claim a breach of contract that is premised on their interpretation of "burglary" as the Illinois criminal definition. That interpretation fails as a matter of law, and therefore, Counts I and II of the complaint, which embody this theory, must fail.

The motion to dismiss is granted as to the ICFA claim, the contract claims set forth in Counts One and Two, and all claims by plaintiff Medina. It is denied to the extent it seeks dismissal of Counts Two and Four as redundant (although, again, Count Two is being dismissed on other grounds). Therefore, the claims that remain are those premised on the allegedly improper denial of coverage under the "forcible entry" clause (Counts Three and Four), the declaratory-judgment counts seeking to invalidate terms of the Rental Agreement as violating public policy (Counts Six, Seven, and Eight), and the common-law negligence claim premised on the failure of Public Storage to adequately secure its facilities.

## II.    Motion for Class Certification

The Court's rulings on the motion to dismiss do not moot the pending motion for class certification, which is limited to an issue that remains in the case. The plaintiff seeks certification of a class with respect to her claim that the provision in the insurance policy that defines burglary as requiring visible signs of "forcible entry" is unconscionable (both procedurally and substantively[7]) and contrary to public policy because it "holds tenants to an onerous burden of proof and also limits the type of evidence that may be considered to prove burglary." Mem., Dkt. #143 at 2. Plaintiff Gross defines the class as follows: "[A]ll individuals who, at any time from December 1, 2008, through August 25, 2011: 1) rented a storage unit from Defendant Public Storage in Illinois; 2) purchased coverage for their storage unit as an insured under Defendant NHIC's policy; and 3) submitted a claim for a burglary loss that was denied on the grounds of

---

[7] Plaintiff contends that the provision is procedurally unconscionable in that: (1) Public Storage does not disclose . . . that it has any interest in the insurance tenants are purchasing, even though "all paid claims are inherently against the interests of Public Storage"; and (2) the evidentiary burden placed on claimants is too onerous. Mem., Dkt. #145 at 6. Plaintiff contends that substantive unconscionability is shown because of the "one-sided nature of the requirement that every class member produce evidence of 'visible signs of forced entry.'" *Id*.

there being no proof of 'forcible entry.'" Mem, Dkt. # 143 at 7-8. Certification is sought pursuant to Federal Rule 23(b)(3).

A plaintiff requesting class certification must satisfy all of the requirements of Federal Rule 23(a) in addition to those of the applicable Rule 23(b) subsection. *Oshana v. Coca-Cola Co.*, 472 F.3d 506, 513 (7th Cir. 2006). The four Rule 23(a) requirements are numerosity, commonality, typicality, and adequate representation of the class by the named plaintiffs and their counsel. Fed. R. Civ. P. 23(a); *Wal–Mart Stores, Inc. v. Dukes*, ——U.S. ——, 131 S. Ct. 2541, 2550 (2011). It is the plaintiff's burden to prove that class certification is warranted. *Oshana*, 472 F.3d at 513.

Unlike a motion to dismiss, a motion for class certification does not require the Court to accept the plaintiff's factual allegations as true. "Before deciding whether to allow a case to proceed as a class action . . ., a judge should make whatever factual and legal inquiries are necessary" to determine whether the requirements are met. *Szabo v. Bridgeport Machs., Inc.*, 249 F.3d 672, 676 (7th Cir. 2001). The Court is required to perform a "rigorous analysis" of whether the requirements for class certification have been met, and the Supreme Court has made plain that, where necessary to conduct that rigorous analysis, a trial court must resolve disputes about the merits of the claim. *Dukes*, 131 S. Ct. at 2551-52; *Gen. Tel. Co. of Southwest v. Falcon*, 457 U.S. 147, 160–61 (1982); *CE Design Ltd., v. King Architectural Metals Inc.*, 637 F.3d 721, 723 (7th Cir. 2011).

In this case, however, despite the long period of class discovery that preceded the plaintiff's amended motion, the Court need not delve too deeply into the factual minutiae of the case. There is at least one—which is not to say that there are not others—clear threshold reason why the proposed class cannot be certified. Specifically, plaintiff Nikita Gross's claims are not

typical of the class—indeed, it might be that she lacks standing altogether with respect to the contract claims that are proceeding—and there can be no class without a representative whose claims typify those of the class members and who adequately represents the class's interests.

Rule 23(a)(3) requires that "the claims or defenses of the representative parties are typical of the claims or defenses of the class." Although "factual distinctions" between the claims of the named plaintiffs and the class members do not preclude certification, the named representatives' claims must have "the same essential characteristics as the claims of the class at large." *Muro v. Target Corp.*, 580 F.3d 485, (7th Cir. 2009) (quoting *De La Fuente v. Stokely-Van Camp, Inc*., 713 F.2d 225, 232 (7th Cir. 1983); *Oshana*, 472 F.3d at 514. Typicality should primarily be determined with reference to the defendants' actions as opposed to the defenses they might have with respect to certain class members. *See CE Design Ltd*., 637 F.3d at 724. However, in many cases, including this one, the typicality requirement merges with the requirement that the class representative fairly and adequately protect the interests of the class, and the existence of defenses that uniquely apply to the named defendants is question of adequacy. *See id.* at 724–725. "[N]amed plaintiffs who are subject to a defense that would not defeat unnamed class members are not adequate class representatives." *Randall v. Rolls-Royce Corp*., 637 F.3d 818, 824 (7th Cir. 2011).

The gist of the plaintiff's arguments in favor of class certification is that the class is challenging a universally applicable provision in a form contract, and therefore, by definition, all class members were injured by the same general course of conduct because their claims were all denied due to lack of "forcible entry." Plaintiff argues that typicality is met because "[p]laintiff and every class member were subject to the same insurance contract containing identical

language regarding burglary," and therefore "*every* tenant that elects coverage under the NHIC policy is typical." Mem., Dkt. #145, at 8 (emphasis in original).

Gross characterizes the members of the class as "tenants injured by Defendants' course of conduct—namely, those tenants whose claims were denied for not being able to provide visible signs of forcible entry." Mem., Dkt. # 145 at 8. But Gross's own case makes it clear how diverse such claims might be notwithstanding the common application of the "forcible entry" provision.[8] Gross's inability to establish forcible entry was not exclusively a result of the "visible signs" limitation that is at the core of the class's challenge; she cannot establish even that her unit was locked at the time of the thefts. Gross's lock was cut for non-payment on October 20, 2013. She does not know if the alleged burglary happened before that time because she never visited the unit between renting it and moving out 13 months later; she has no idea if her unit had a lock on it when her possessions were allegedly stolen. To the extent that any inference can be drawn, however, it is that the theft took place after the lock was cut (whether before it was replaced with a Public Storage lock or afterward; Gross alleges that unauthorized persons had keys to the Public Storage locks of the sort that replaced her own after it was cut). Given that her lock was cut for legitimate reasons that she does not challenge, she cannot satisfy any predicate of "burglary" under the policy, most notably the requirement that her unit have been locked she had supplied at the time her possessions were taken.

Thus, unlike the class members whose interests she seeks to represent, Gross did not forfeit insurance coverage by virtue of her inability to comply with the onerous evidentiary

---

[8] It might be, as the defendants argue, that there is no real commonality among any of the class members and that individualized issues predominate because there is no "standard policy" for burglary claims, as each is evaluated under the totality of the circumstances and is "dependent on the facts particular to each claim." Mem., Dkt. # 144 at 4, 13-15. The Court does not need to pass on that question at present, however, because it suffices to say that Gross's claim, at least, does not fit the mold of the class claim she seeks to advance.

burden placed on claimants to prove forcible entry with visible evidence. That her claim is different from that of the class can be seen from the fact that prevailing on the class claim would not strengthen her individual claim; she would not have been entitled to coverage even if there were no requirement in the contract requiring evidence of forcible entry. The class does not challenge the policy's requirement that a unit have been securely locked at the time of the alleged burglary, so overturning the "visible signs" provision would not help Gross's own case. That Gross was unable to prove that her unit was locked at the time of the theft provided an independent—and unchallenged—basis for the denial of her claim and plainly distinguishes her claim from those premised on an argument that the forcible entry provision is unconscionable because its bars claims from legitimate burglary victims. *See Oshana*, 472 F.3d a 514 ("factual defenses" undermined typicality of named plaintiff's claim); *CE Design Ltd*., 637 F.3d 721 (named plaintiff who consented to faxed ads could not represent plaintiff class in junk-fax lawsuit). The factual defenses to Gross's claims take her out the class of renters whose units were actually burglarized but could not provide sufficient evidence of forced entry to trigger the coverage; the defendants' actions with respect to Gross are not the same as its actions in simply providing the allegedly illusory insurance, as is the claim of the class. Ms. Gross has little incentive to argue that the "forcible entry" requirement should be changed when such a change does nothing to strengthen her own claim. *See Muro*, 580 F.3d at 492 (named plaintiff without a typical claim had little incentive to argue issue of significance to class as a whole).

Moreover, because of the details of Gross's claim, there is a question whether she even has standing to challenge the "forcible entry" provision of the contract, where her injury was likely caused by the action taken in response to her arrearage, not the allegedly illusory nature of

the coverage.[9] That question will be left for another day, having not been raised or briefed by the parties. For now it suffices to note that the record demonstrates that Gross's claims are not typical of the claims of the class member she purports to represent, and she cannot adequately represent them as a class.[10]

\* \* \*

Because, at a minimum, plaintiff Gross has failed to meet her burden of establishing typicality and adequacy of representation, the motion for class certification is denied.

Date: April 30, 2014

John J. Tharp, Jr.
United States District Judge

---

[9] Once a class is certified, "as long as one member of a certified class has a plausible claim to have suffered damages, the requirement of standing is satisfied . . . even if the named plaintiff (the class representative) lacks standing, provided that he can be replaced by a class member who has standing." *Kohen*, 571 F.3d at 676. "*Before* a class is certified, it is true, the named plaintiff must have standing." *Id.* (emphasis in original).

[10] The defendants also posit that plaintiffs' counsel are not adequate to represent the class, due to a "track record of delay and game-playing in the discovery and class certification process," including discovery abuse that drew sanctions. However, this not the type of misconduct, lack of integrity, or ethical violation that the Seventh Circuit has said requires denial of class certification. *See Reliable Money Order, Inc. v. McKnight Sales Co., Inc.*, 704 F.3d 489 (7th Cir. 2013); *Creative Montessori Learning Centers v. Ashford Gear LLC*, 662 F.3d 913 (7th Cir. 2011). Any issues that concern counsels' competence or skill in handling the case to date are between plaintiff and her privately retained attorneys; the defendants have not made the kind of showing that would warrant intervention by the Court.